UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
                                                         :
                                                         :
            - v -                                        :    18-CR-557 (VSB)
                                                         :
                                                         :    **OPINION & ORDER**
                                                         :
ALDO MEJIA,                                              :
                                                         :
                              Defendant.                 :
                                                         :
---------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      Before me is the motion of Aldo Mejia ("Defendant" or "Mejia") pursuant to 18 U.S.C. § 3582(c)(1)(A), to "reduc[e] his sentence of imprisonment to time served and impos[e] a condition of home confinement for a time equivalent to the time remaining on his sentence," because of his "predisposition to diabetes, the Federal Bureau of Prison's ("BOP") failure to address and remedy a serious and painful reoccurring stomach condition and blood in Mr. Mejia's urine, the presence of COVID-19 within the BOP as well it's resurgence around the country, and Mr. Mejia's post offense rehabilitation conduct." (Mejia Mot. 1.)[1] Because Defendant has failed to demonstrate any extraordinary and compelling circumstances that would warrant the reduction of his sentence and early release, and the Section 3553(a) factors militate against reducing Mejia's sentence to time served, Mejia's motion for compassionate release is DENIED.

---

[1] "Mejia Mot." refers to the letter to me from Mr. Mejia dated November 23, 2020. (Doc. 32.)

## I. Factual Background[2]

In February 2017, the Drug Enforcement Administration ("DEA") began "investigating a Drug Trafficking Organization ("DTO") that uses commercial trucks to transport cocaine and heroin to and from various locations within the United States." (PSR ¶ 9.) The DTO transported narcotics from California to the New York-New Jersey area using truck drivers employed by commercial trucking companies. (*Id.*) The drivers also received the proceeds from the DTO narcotics sales and took them to California. The transactions primarily took place along rest stops and highways in New York and New Jersey. (*Id.*)

Prior to the beginning of the investigation into the activities of the DTO in 2017, law enforcement officers encountered Mejia. Specifically, on September 19, 2013, law enforcement officers in San Bernardino, California searched Mejia's parent's home. (*Id.* ¶ 10.) At the time of the search, Mejia "told officers that his parents had no knowledge of any narcotics activity at the residence," but he was "aware of money inside his tractor trailer in the backyard." (*Id.*) Officers found 16 plastic-wrapped packages containing $564,000. The DEA believed the money was proceeds from narcotics sales. (*Id.*)

GPS data from a tracking device placed on a car used by Minel Arias showed that on April 1 and 2, 2018, "the car made several stops at various truck stops in New Jersey and returned to Queens, NY, where Arias lived." (*Id.* ¶ 11.) GPS data from a cell phone belonging to Mejia showed that his cell phone was "in the same vicinity as Arias' car." Records also showed that a cell phone used by Arias contacted Mejia's cell phone. (*Id.* ¶12.) The data suggests that Aria and Mejia met in New Jersey and participated in a "narcotics-related transaction." (*Id.* ¶ 13.)

---

[2] The facts contained in this section are taken from Defendant's Presentence Investigation Report ("PSR").

Additional GPS data from Mejia's phone collected from June 8, 2018 shows that "the phone departed Los Angeles, CA, on June 9, 2018, and traveled east towards New Jersey." (*Id.* ¶ 14.) Law enforcement officers began physically surveilling Mejia in New Jersey and Pennsylvania on June 10, 2018. (*Id.* ¶ 15.) Tracking data from June 11, 2018 shows that Arias left his home in Queens and traveled to Carteret, New Jersey. (*Id.* ¶ 16.) At 2:37 a.m. that same day, law enforcement officers saw a vehicle registered to Aria's wife leave a convenience store and travel to Queens, New York. (*Id.*) "[A]t 2:55 a.m., law enforcement conducted a motor vehicle stop on a tractor trailer driven by Mejia, who provided consent to search the vehicle." (*Id.* ¶ 17.) A narcotics canine detected narcotics in the cab of the vehicle. Officers found a void inside the dashboard containing $100,000. (*Id.*) Mejia admitted that someone in California hired him to transport narcotics he believed to be cocaine from California to New Jersey; he also admitted he delivered those narcotics to Arias. (*Id.*) At 3:30 a.m. on the same day, "law enforcement conducted a motor vehicle stop on the vehicle driven by Arias." (*Id.* ¶ 18.) Arias consented to a search, during which officers "discovered 40 pressed, brick-shaped packages wrapped in tape believed to be cocaine." (*Id.*) Arias also consented to a search of his home; officers found three kilograms of suspected narcotics and a large amount of cash. (*Id.*) Mejia was arrested on June 11, 2018. (*Id.* ¶ 19.)

## II. **Procedural History**

After waiving his right to be indicted by a grand jury, (Doc. 13), Mejia was charged on August 3, 2018, in an Information with participating in a narcotics conspiracy from November 2017 to June 11, 2019. (Doc. 12.) On August 31, 2018, Mejia appeared before Magistrate Judge Gabriel W. Gorenstein and pled guilty to the conduct alleged in the Information pursuant to a plea agreement. (*See generally* Doc. 18.) Defendant's applicable guideline range was 108 to

135 months' imprisonment, (PSR ¶ 73). Mejia was sentenced on June 14, 2019. After considering the factors contained in 18 U.S.C. § 3553(a), I granted Mejia a variance and sentenced him to 42 months' imprisonment, and three years of supervised release. At the time Mejia filed the instant motion, he was housed at FDC SeaTac ("SeaTac"); however, he is currently housed Long Beach RRM. *Find an Inmate*, Fed. Bureau of Prisons (last visited June 20, 2021), https://www.bop.gov/inmateloc/.)

Mejia filed this pro se motion on November 23, 2020. (Doc. 32.) The Government filed its opposition on November 30, 2020, (Doc. 33), and Mejia filed his reply on December 7, 2020, (Doc. 34).

### III. Legal Standards

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Section 3582(c)(1)(A)(i), the compassionate release statute, provides one such exception. The compassionate release statute permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[3] 18 U.S.C. § 3582(c)(1)(A).

---

[3] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13, although I note that the Sentencing Guidelines have not yet been revised to take into account the First Step Act. *United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, *2 (S.D.N.Y. Apr. 3, 2020). However, the Second Circuit recently interpreted § 1B1.13 in light of the First Step Act, and concluded that when a "compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it." *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020). "Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.* "However, courts remain free – even after *Brooker* – to look to § 1B1.13 for guidance in the exercise of their discretion." *United States v. Burman*, No. 16 Cr. 190 (PGG), 2021 WL 681401, at *5 (S.D.N.Y. Feb. 21, 2021) (internal quotation marks omitted).

4

Until recently, a court could not order compassionate release unless the BOP requested such relief on a prisoner's behalf. *See* U.S.S.G. § 1B1.13; *see also Gotti*, 433 F. Supp. 3d at 614. However, in December 2018, Congress passed the First Step Act, which did away with BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely. *See id.* The statute clearly states that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the "opportunity to correct [their] own mistakes," *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, it promotes efficiency, since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.*

"The provenance of an administrative exhaustion requirement determines its scope." *United States v. Monzon*, No. 99cr157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020). There are two types of exhaustion requirements: jurisdictional ones and non-jurisdictional ones. Jurisdictional exhaustion requirements "govern a court's adjudicatory authority" and are not subject to any exceptions. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal quotation marks omitted). Non-jurisdictional requirements, also referred to as "claim-processing rules," can be "forfeited if the party asserting the rule waits too long to raise the point." *Kontrick v.*

*Ryan*, 540 U.S. 443, 456 (2004). The Second Circuit has not yet squarely answered the question of whether the exhaustion requirement of § 3582(c) is jurisdictional.[4] *Monzon*, 2020 WL 550220, at *2.

IV. **Discussion**

A. *Exhaustion*

On October 1, 2020, Mejia petitioned the warden at FCI Sheridan for early release.[5] (Mejia Mot. 4.) Mejia's request was denied on October 26, 2020.[6] (*Id.*) The Government concedes that "[e]xhaustion is not an obstacle in this case." (Govt. Opp. 2, fn. 1).[7] Therefore, the Government concedes that Mejia has met the exhaustion requirement. Accordingly, I find that Defendant has satisfied the exhaustion requirement and, in any event, that the Government has waived this issue. *See United States v. Russo*, 454 F.Supp.3d 270, 275 (S.D.N.Y. 2020) (finding "the Government can waive the affirmative defense of exhaustion.").

---

[4] Other courts of appeal are split on the question of whether section 3582(c) as a whole is jurisdictional or non-jurisdictional. *Compare United States v. Castenada-Ulloa*, 818 F. App'x 813, 815–16 (10th Cir. June 23, 2020) (applying jurisdictional rule but noting intra- and inter-circuit split); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012), *and United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993), *with United States v. Franco*, 973 F.3d 465, 468 (5th Cir.), *cert. denied*, 141 S. Ct. 920 (2020) (considering section 3582(c) a claim-processing rule); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020); *United States v. May*, 855 F.3d 271, 274–75 (4th Cir. 2017); *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1245 (11th Cir. 2017); *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015); *and United States v. Weatherspoon*, 696 F.3d 416, 421 (3d Cir. 2012). Although the Second Circuit has not weighed in on whether the exhaustion requirement of section 3582(c)(1)(A) is jurisdictional, it has, "in a related context . . . firmly disagreed with the characterization by certain other circuits that § 3582(c)(2) is jurisdictional." *United States v. Haney*, 454 F. Supp. 3d 316, 319 (S.D.N.Y. 2020) (citing *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013)).

[5] Mejia was incarcerated at Sheridan until November 2020.

[6] Mejia claims Exhibit F to his motion is the October 26, 2020 letter denying his request for compassionate release; however, that exhibit appears to be evaluations of his performance as an inmate companion. This apparent error does not impact my analysis of the exhaustion issue since, as noted above, the Government does not dispute that Mejia has met the exhaustion requirement.

[7] "Govt. Opp." refers to the Government memorandum in opposition to Mejia's motion for compassionate release dated November 30, 2020. (Doc. 36.)

### B.   *Extraordinary and Compelling Circumstances*

Mejia contends that he has two medical conditions that constitute extraordinary and compelling circumstances counseling in favor of his release.  First, Mejia has a "predisposition to diabetes which, if it develops, renders him high risk of serious illness or death if he were to contract COVID-19, according to the Center for Disease Control."  (Mejia Mot. 2.) Additionally, Mejia has "has experienced severe abdominal issues as well as blood in his urine for the past 2 ½ years of his incarceration."  (*Id*.)  Mr. Mejia alleges that he has sought, but has not received, adequate medical treatment for his abdominal issues.  (*Id*. at 3.)  In addition, Mejia argues that the conditions of incarceration constitute extraordinary and compelling circumstances warranting release due to the presence of COVID-19 within the Bureau of Prisons.  According to Mejia, "[a]voiding [] close exposure to COVID-19 is simply impossible for inmates and detainees" because the "[c]onditions of confinement create the ideal environment for the transmission of contagious disease."  (*Id*. at 5.)  Mejia also notes that he was exposed to COVID-19 when an inmate in his unit at FDC Seatac tested positive, and cites to the resurgence of COVID-19 across the country as evidence that the "pandemic is far from over and the number of positive cases daily show that it is just a matter of time before our jails feel the effects that the rest of the country is experiencing."  (*Id*. at 7.)  Lastly, Mejia cites his post-offense rehabilitation as a factor favoring release.  During his incarceration, Mejia has completed three certificates for inmate companion training and serves as an inmate companion for suicide prevention. Additionally, Mejia is employed as an orderly and began taking classes to obtain his GED.  (*Id*. at 7–8.)

The Government rebuts each of Mejia's arguments in favor of his release.  First, the Government notes that Mr. Mejia does not have diabetes; he merely speculates that he may

7

develop diabetes in the future. (Govt. Opp. 3.) Second, the Government argues that it is not clear from Mejia's medical records that the abdominal issues he references are ongoing. The Government cites to long periods in Mejia's history without complaints and points out that his most recent visit to a healthcare provider did not include diagnosis or treatment for abdominal issues. (*Id*.) Neither the presence of COVID-19 nor its resurgence across the country, the Government argues, counsel in favor of Mejia's release. Lastly, the Government addresses Mejia's rehabilitation during his incarceration, asserting that his rehabilitation alone may not constitute an extraordinary and compelling circumstance. (*Id*. at. 4)

### 1. Mejia's Medical History

#### a. Mejia's Predisposition to Diabetes

The Center for Disease Control and Prevention ("CDC") cautions on its website that it is "learning more about COVID-19 every day, and [the list of medical conditions] may be updated as the science evolves." *People With Certain Medical Conditions*, Centers for Disease Control and Prevention, (last visited June 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.htmlhttps://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC currently advises that "[a]dults of any age with [certain medical conditions] can be more likely to get severely ill from COVID-19."

The CDC advises that "[h]aving either type 1 or type 2 diabetes can make you more likely to get severely ill from COVID-19." *Id*. Mr. Mejia does not claim that he has either type1 or type 2 diabetes, but rather that he has a predisposition to diabetes. Mejia's medical records also reflect that Mr. Mejia does not have diabetes at this time. (Mejia Mot., Ex. A at 9, 15; Ex. C at 15.) Even where Defendants have demonstrated that they qualify as prediabetic, Courts in this

Circuit have found that the condition whether alone or in combination with other health conditions do not rise to the level of an extraordinary and compelling circumstance. *See United States v. Corin*, No. S7 10 CR 391-64 (CM), 2020 WL 5898703, at *3 (S.D.N.Y. Oct. 5, 2020) (denying Defendant with prediabetes compassionate release because he "[did] not suffer from any of the medical conditions that would cause the Court to even contemplate granting him compassionate release on medical grounds."); *United States v. Thomas*, No. 15 CR. 667-5 (KPF), 2020 WL 6364677, at *4–5 (S.D.N.Y. Oct. 29, 2020) (denying compassionate release and finding that Defendant with hyperlipidemia, hypertension, and was pre-diabetic was not at high risk from COVID-19.); *United States v. Saleh*, 2020 WL 3839626 at *1, 3, 93Cr181 (S.D.N.Y. July 8, 2020) (denying compassionate release motion of a 64-year old defendant who claimed to suffer "from problems with his knee, back, and eye, and a 'risk' for colon cancer", bronchitis, latent tuberculosis, pre-diabetes, obesity, and high cholesterol); *United States v. Livingston*, 2020 WL 1905202 at *3, 18-CR-416 (ENV) (S.D.N.Y. Apr. 17, 2020) (denying a compassionate release motion based upon a defendant's prediabetes condition, stating "[y]et, nothing in the guidelines promulgated by the [] CDC suggests that prediabetes puts one at a higher risk for severe illness from infection.")  Here, Mejia alleges far less—he points only to a family history of diabetes.  A predisposition to diabetes alone does not, as the Government points out, put Mejia at a higher risk of severe illness should he contract COVID-19.  (Govt. Opp. 3)

      b. <u>Mejia's Abdominal Pain</u>

Mejia reports that he has suffered from severe stomach issues and blood in his urine over the past 2 ½ years.  (Mejia Mot. at 2.)  He was seen for stomach issues on July 20, 2018, September 9, 2019, and October 28, 2020.  (*Id.*)  He was hospitalized for severe abdominal pain on June 26, 2019.  (*Id.*)  Mejia also notes that he had other medical issues that are not

documented in his medical records. Specifically, he details a July 30, 2020 complaint he filed regarding sharp pain under his ribs, blood in his urine and requesting a CT scan. Mejia alleges that he went to sick call but was never called for an examination. The medical department responded to Mejia's request, claiming that there was no documentation of his complaint in his medical record. (*Id*. at 2–3.) Mejia characterizes this as the type of negligence that demonstrates that he is not being provided with adequate medical care while incarcerated, and that this counsels in favor of compassionate release.

The Government claims it is not clear that Mejia's stomach condition is current. The Government points out that there were long periods of time between Mejia's complaints, and that medical records suggest that "Mejia's most recent documented exam suggests the issues were more historical th[a]n recent." (Govt. Opp. 3.)

Mejia has failed to show that the medical treatment he has received is inadequate so as to warrant my granting his compassionate release motion. Mejia's medical records suggest that, on balance, the medical department responded to his complaints and provided adequate care. Defendant points to one specific incident, his July 30, 2020 complaint and medical department's response, as proof that his treatment has been inadequate. However, the medical department did take action in the following months. Following his July 30, 2020 complaint, he saw a clinician on October 28, 2020. In response to his complaints of pain under his right rib and blood in his urine, the clinician ordered a series of lab tests, including a urinalysis, "a test of [] urine . . . used to detect and manage a wide range of disorders, such as urinary tract infections, kidney disease and diabetes." *Urinalysis*, Mayo Clinic, (last visited February 28, 2021), https://www.mayoclinic.org/tests-procedures/urinalysis/about/pac-20384907. (Mejia mot., Ex. B at 6.) "While this Court is cognizant of [Defendant's] need for medical care, that need alone is

insufficient to warrant compassionate release, especially given the severity of his criminal conduct." *United States v. Saleh*, No. 93CR181, 2020 WL 3839626, at *5 (S.D.N.Y. July 8, 2020).

Even though Defendant has failed to demonstrate that the medical care he has received for his abdominal pain thus far is inadequate, Mejia's assertions that his pain remains unmanaged is concerning. Therefore, the Bureau of Prisons should, to the extent possible, arrange for Mejia to be seen by a medical professional(s) to assess whether he requires additional treatment to manage and/or resolve his pain.

### 2. Conditions at Facility

Mejia contends that the "[c]onditions of confinement create the ideal environment for the transmission" of COVID-19." (Mejia Mot. at 5.) At the time of his filing, Mejia noted that there were six cases of COVID-19 at FDC SeaTac, and 14,697 new cases across state and federal prisons. (*Id*.) Despite the low number of cases at FDC SeaTac, Mejia cautions that an outbreak is possible at any time, as demonstrated by outbreaks at other correctional facilities. (*Id*. at 6.) Mejia also notes the "resurgence of the coronavirus infection in the United States," citing the one million new cases since the beginning of November. (*Id*.) The Government argues that "the presence of COVID-19 within the BOP as well its resurgence around the country does not create an extraordinary and compelling reason for release." (Govt. Opp. 3.)

While Mejia's motion for compassionate release was pending, he was transferred to Long Beach RRM. As such, "[n]ow that [Mejia] has been transferred, his reliance on the conditions at [FDC SeaTac] is moot." *United States v. Hooker*, No. 18 CR. 768 (RMB), 2020 WL 6504539, at *3 (S.D.N.Y. Nov. 5, 2020); *United States v. Gumbs*, No. 16-CR-821 (NSR), 2021 WL 1372964, at *1 (S.D.N.Y. Apr. 9, 2021) ("[a]s [Defendant] has now been released from incarceration at [FDC SeaTac], and he is no longer facing conditions of confinement that place him at greater risk of

contracting COVID-19, his motion is rendered moot."). In light of this transfer, I need not and do not address Mejia's conditions of confinement at FDC SeaTac and whether those conditions amount to extraordinary and compelling reasons sufficient to justify the modification of his sentence.

Putting to the side the alleged conditions at FDC SeaTac, to the extent that Mejia's argument refers to the conditions of confinement generally, it is still unpersuasive. As an initial matter, Courts within this Circuit have routinely concluded that "the pandemic itself – without more – does not present extraordinary and compelling circumstances warranting a compassionate release." *Musa v. United States*, No. 19-CV-9130 (RJS), 2020 WL 6873506, at *8 (S.D.N.Y. Nov. 23, 2020) (quoting *United States v. Felix*, No. 12-cr-322 (RJS), 2020 WL 4505622, at *2 (S.D.N.Y. Aug. 4, 2020). *See also UNITED STATES OF AMERICA v. VICTOR LORENZANO*, No. 03 CR. 1256 (JFK), 2021 WL 734984, at *5 (S.D.N.Y. Feb. 24, 2021) ("The current COVID-19 pandemic is an unprecedented worldwide catastrophe. But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses. . . whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling'") (quoting *United States v. Mood*, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020). The BOP has consistently taken steps to mitigate the spread of COVID-19. Those steps have proven effective to some degree, as there are BOP facilities with very few or no COVID-19 cases. (*Id.*) Further, the BOP has begun vaccinating its 143,171 inmates and 36,000 staff members; to date, it has administered 193,486 doses of the COVID-19 vaccine. COVID-19 Coronavirus, COVID-19 Cases, Federal Bureau of Prisons, (last visited June 13, 2021) https://www.bop.gov/coronavirus/. Therefore, I agree with other courts in this Circuit and find that the presence of COVID-19 within BOP facilities or its resurgence in the United States does not constitute extraordinary and compelling circumstances.

### 3. Defendant's Post-Offense Rehabilitation

Mejia notes that since his incarceration, he has used his time productively by, among other things obtaining three certificates for the completion of an inmate companion program and for service as an inmate companion for Suicide Prevention. (Mejia Mot. 7.) Mejia also worked as a paid orderly while incarcerated at MCC and began studying for his GED in October 2019. (*Id*. at 8.) The Government argues that rehabilitation alone is not an extraordinary and compelling circumstance. (Govt. Opp. at 4.) Mejia counters that in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), the Second Circuit maintained district courts have broad discretion in determining what constitutes extraordinary and compelling circumstances. (Mejia Reply at 1.)

I commend Mr. Mejia for using his time in prison productively. However, Defendant's characterization leaves out a vital detail. The Court in *Brooker* articulated a limit to the district court's discretion: that the sole "statutory limit on what a court may consider to be extraordinary and compelling is that [r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason." *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020) (internal quotation marks omitted). *See also United States v. Walden*, No. 96-CR-0962 (LAK), 2020 WL 7870670, at *4 (S.D.N.Y. Dec. 31, 2020) (finding that "defendant's claim that compassionate release should be granted based on his alleged rehabilitation necessarily fails because rehabilitation alone cannot support a motion for compassionate release."); *United States v. Nwankwo*, No. 12 CR 31(VM), 2020 WL 7335287, at *3 (S.D.N.Y. Dec. 14, 2020) (concluding that "[Defendant's] rehabilitative efforts [were] certainly commendable, but they do not, either alone or in combination with the other circumstances he cites, meet the extraordinary and compelling standard.") (internal quotation marks omitted); *United States of America v. Jorge Mario Paredes-Cordova*, a/k/a "Pablo," No. S8 03 CR. 987 (PAC), 2021 WL 761849, at *6 (S.D.N.Y. Feb. 26, 2021) (finding that "rehabilitation alone cannot establish extraordinary and

compelling reasons.") Therefore, I find that Mejia's post-offense rehabilitation does not constitute an extraordinary and compelling circumstance that counsels in favor in compassionate release.

### 4. Section 3553(a) Factors

Granting Mejia's compassionate release motion would require reducing his sentence to time served which would result in a substantial reduction in his sentence. Mejia's applicable guideline range was 108 to 135 months' imprisonment, (PSR ¶ 73), the Probation Department recommended a sentence of 60 months' imprisonment, and in its sentencing submission, the Government requested that I impose a sentence "between Probation's recommendation of 60 months and the low-end of the Stipulated Guidelines range of 108 to 135 months' imprisonment", (Doc. 25 at 3). After considering the factors under 18 U.S.C. § 3553(a), I sentenced Mejia to 42 months' imprisonment—a substantial variance from his guideline range. Mejia is scheduled to be released on July 28, 2021; therefore, there is approximately 1 ½ months remaining on his sentence.

Mejia's conduct was extremely serious. Mejia was part of a narcotics conspiracy that lasted approximately a year and a half. He aided a Drug Trafficking Organization in distributing substantial quantities of heroine, fentanyl and cocaine. Mejia transported these narcotics across the country for distribution in the New York metropolitan area and was prepared to take proceeds from the narcotics trafficking to California. For the reasons stated in detail at Mejia's sentencing, which are incorporated by reference here, and those outlined above, I find that modifying Mejia's term of imprisonment would disserve the sentencing factors contained in Title 18, United States Code, Section 3553(a). Mejia's sentence reflected the seriousness of his conduct, the nature of the offense, and his personal history. I do not find that the circumstances

14

have changed, including due the current health crises due to COVID-19, so dramatically as to warrant a sentence of time served.

## V. Conclusion

For the reasons stated above, because I find that on the current record that Mejia has not sufficiently established extraordinary and compelling circumstances justifying the reduction in his sentence and his release from custody, and the Section 3553(a) factors militate against reducing Mejia's sentence to time served, Defendant's motion for compassionate release is DENIED.

SO ORDERED.

Dated: June 22, 2021
     New York, New York

_____
Vernon S. Broderick
United States District Judge